1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9    Angel Lopez-Valenzuela,                    No. CV-14-00381-PHX-PGR (BSB)

10                   Petitioner,                **REPORT AND**
                                                **RECOMMENDATION**
11   v.

12   Charles L. Ryan, et al.,

13                   Respondents.

14

15        Petitioner Angel Lopez-Valenzuela has filed a Petition for Writ of Habeas Corpus,

16   pursuant to 28 U.S.C. § 2254, raising four grounds for relief.  (Doc. 1.)  Respondents

17   argue that several of Petitioner's claims are procedurally barred from federal habeas

18   corpus review and that his remaining claims lack merit.  (Doc. 10.)  Petitioner has filed a

19   reply in support of his Petition.  (Doc. 12.)  For the reasons below, the Court recommends

20   that the Petition be denied.

21   **I.     Procedural Background**

22          **A.     Conviction and Sentence**

23        On March 13, 2008, Petitioner was indicted on one count of sale or transportation

24   of dangerous drugs, a class two dangerous felony.  (Doc. 10, Ex. A.)  After a trial, a jury

25   found Petitioner guilty of one count of sale or transportation of dangerous drugs, a class

26   two non-dangerous felony.   (Doc. 10, Ex. B.)   On November 25, 2008, the court

27   sentenced him to a mitigated term of nine years' imprisonment, with 265 days of

28   presentence incarceration credit.  (*Id.*)

**B.      Summary of the Facts**

In its memorandum decision affirming Petitioner's conviction and sentence, the Arizona Court of Appeals summarized the facts of the incident giving rise to Petitioner's conviction and sentence.[1]  The following summary of the facts is drawn from the court of appeals' summary.  In March 2008, undercover Tempe Police Department detective Michael Pooley contacted Trinidad Valenzuela-Zayas through a confidential informant about buying methamphetamine.  (Doc. 10, Ex. C at 2.)  Detective Pooley later met Valenzuela-Zayas who gave him a sample of the "product," which was stipulated at trial to be methamphetamine.  (*Id.* at 2-3.)  The detective wore a recording and transmitting device that recorded his conversation with Valenzuela-Zayas.  (*Id.* at 3.)

The detective told Valenzuela-Zayas he wanted to buy more methamphetamine and asked how much it cost.  (*Id.*)  Valenzuela-Zayas said he had to call "Angel" to get that information.  (*Id.*)  Valenzuela-Zayas made a call on his cellular phone, talked briefly, and then gave the phone to the detective.  "Angel" told the detective that the price was $17,000 per pound.  (*Id.*)  The detective agreed to buy seven pounds and "Angel" said he would call back on Valenzuela-Zayas' phone to confirm that he had enough product.  (*Id.*)  "Angel" called back and told the detective the transaction would take place that night or the next day, and that he would call the detective.  (*Id.*)

The next day, Valenzuela-Zayas called the detective and told him to go to a grocery store parking lot later that afternoon to buy the drugs.  (*Id.*)  Valenzuela-Zayas said he would be waiting with another man.  (*Id.*)  Police officers who were watching the location observed Valenzuela-Zayas waiting in the parking lot with another man whom officers identified at trial as Petitioner.  (*Id.*)  When the detective arrived, Valenzuela-

---

[1]  The appellate court's factual determinations are entitled to a presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765, 769 (1995) (per curiam) ("In habeas proceedings in federal court, the factual findings of state courts are presumed to be correct."); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that the statement of facts in an Arizona Supreme Court opinion should not be afforded the presumption of correctness).  Additionally, review of the record supports the appellate court's summary of the facts.  (Doc. 10, Ex. L, M.)

Zayas and Petitioner were standing by a truck. (*Id.* at 3-4.) Valenzuela-Zayas introduced the detective to Petitioner, identifying him as "Angel" to whom the detective had spoken on the phone the day before. (*Id.* at 4.) The detective also recognized Petitioner's voice as belonging to "Angel." (*Id.*) Valenzuela-Zayas told the detective the drugs were at different parking lot nearby. (*Id.*) Petitioner gave the detective specific directions to that parking lot and they all drove to the second location. (*Id.*) Petitioner drove a truck with Valenzuela-Zayas as a passenger and the detective drove by himself in a separate vehicle. (*Id.*)

At the second parking lot, Petitioner and Valenzuela-Zayas parked next to a car. Another man exited the car and handed Valenzuela-Zayas a plastic bag through the open passenger window of Petitioner's truck. (*Id.*) Petitioner and Valenzuela-Zayas then drove to where the detective was parked, and Valenzuela-Zayas told the detective to get in the truck with Petitioner. (*Id.*) When the detective got to the driver's side, Petitioner showed him the contents of a plastic bag that was sitting on his lap. (*Id.*) At trial, the parties stipulated the bag's contents were methamphetamine. (*Id.*) The detective got in the truck. (*Id.*)

"The [p]olice then moved in and arrested [Petitioner] and Valenzuela-Zayas." (*Id.*) At trial, the State introduced English transcripts of the Spanish conversations between the detective, Petitioner, and Valenzuela-Zayas recorded by the device the detective wore during the events. (*Id.*) Petitioner testified and denied that he talked with the detective over the phone. (*Id.*) According to Petitioner, Valenzuela-Zayas called him and asked for a ride to pick up money that his employer owed him. (*Id.*) Petitioner stated that Valenzuela-Zayas told him they had to go to the second parking lot to meet the person who was going to pay him. (*Id.*) Petitioner further testified that once there, a man in a car handed a bag to Valenzuela-Zayas and Petitioner "started suspecting that something was going on." (*Id.*) Petitioner maintained he never spoke to the detective and knew nothing about a drug sale. (*Id.*)

1    **C.    Direct Appeal**

2    Petitioner timely appealed to the Arizona Court of Appeals and appointed counsel

3    filed an opening brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that

4    counsel had searched the record and found no arguable question of law to raise on appeal.

5    (Doc. 10, Ex. D.)    The appellate court gave Petitioner the opportunity to file a

6    supplemental brief, but he did not do so.  (Doc. 10, Ex. C at 2.)   After reviewing the

7    record for fundamental error, on November 24, 2009, the appellate court affirmed

8    Petitioner's conviction and sentence.  (Doc. 10, Ex. C.)  Petitioner did not file a petition

9    for review in the Arizona Supreme Court.  (*Id.*)

10    **D.    Post-Conviction Proceedings**

11    On September 30, 2009, while his direct appeal was still pending, Petitioner filed a

12    notice of post-conviction relief in the state trial court pursuant to Arizona Rule of

13    Criminal Procedure 32.  (Doc. 10, Ex. E.)   Appointed counsel later filed a notice of

14    completion of record stating that, after reviewing the record, he could find no colorable

15    claims to raise on Petitioner's behalf.  (Doc. 10, Ex. F.)

16    Petitioner then filed a pro se petition for post-conviction relief arguing that trial

17    counsel rendered ineffective assistance by failing to (1) conduct an adequate pretrial

18    investigation, (2) allow Petitioner to review the evidence, (3) obtain an expert to analyze

19    the voice on a recording, (4) call Petitioner's co-conspirator as a witness, and (5) properly

20    cross-examine state witnesses.  (Doc. 10, Ex. G.)  Petitioner further alleged that counsel

21    was ineffective for stipulating to the admission of several trial exhibits.  (*Id.*)  On March

22    31, 2011, the court dismissed the petition for post-conviction relief stating that it agreed

23    with the state's arguments in opposition to the petition.  (Doc. 10, Ex. H.)

24    Petitioner filed a petition for review in the Arizona Court of Appeals alleging that

25    trial counsel was ineffective for failing to (1) allow Petitioner to review the evidence,

26    (2) perform an adequate pretrial investigation, (3) interview and call witnesses,

27    (4) properly cross-examine witnesses, and (5) obtain expert testimony.  (Doc. 10, Ex. I.)

28

1   The Arizona Court of Appeals summarily denied review on February 27, 2013.  (Doc. 10,

2   Ex. J.)

3          **E.**       **Petition for Writ of Habeas Corpus**

4          On February 26, 2014, Petitioner filed a petition for writ of habeas corpus in this

5   Court raising the following claims: (1) his Fourth Amendment rights were violated

6   because a police detective fabricated the facts used to establish probable cause for his

7   arrest (Ground One); (2) his Fifth Amendment right to due process was violated and trial

8   counsel rendered ineffective assistance when counsel agreed to stipulate to the admission

9   of all evidence presented by the prosecutor, thus prohibiting Petitioner from challenging

10  any evidence admitted at trial (Ground Two), (3) trial counsel rendered ineffective

11  assistance by failing to inform Petitioner of the charges and to provide him evidence in

12  his case (Ground Three); and (4) his Fourteenth Amendment rights to due process and

13  equal protection were violated when trial counsel failed to investigate and subpoena

14  witnesses and stipulated to the admission of evidence without Petitioner's consent

15  (Ground Four). (Doc. 1 at 7-10.) Respondents argue that habeas corpus review of

16  several of these claims is procedurally barred and that Petitioner's remaining claims lack

17  merit.  (Doc. 10.)

18  **II.**       **Exhaustion and Procedural Bar**

19         Ordinarily, a federal court may not grant a petition for writ of habeas corpus

20  unless the petitioner has exhausted available state remedies.  28 U.S.C. § 2254(b).  To

21  exhaust state remedies, a petitioner must afford the state courts the opportunity to rule

22  upon the merits of his federal claims by "fairly presenting" them to the state's "highest"

23  court in a procedurally appropriate manner.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

24  ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly

25  present' his claim in each appropriate state court . . . thereby alerting that court to the

26  federal nature of the claim"); *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (same).

27         A claim has been fairly presented if the petitioner has described both the operative

28  facts and the federal legal theory on which his claim is based.  *See Baldwin*, 541 U.S. at

33.  A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Id.* at 31-32.  Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights.  *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims.  *See Coleman*, 501 at 731-32.  Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims.  *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).  If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted.  *Coleman*, 501 U.S. at 732, 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds.  *See Beard v. Kindler*, 558 U.S. 53 (2009).  "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance."  *Coleman*, 501 U.S. at 731-32.  In this situation, federal habeas corpus review is precluded if the state court

opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989).

A state procedural ruling is "independent" if the application of the bar does not depend on an antecedent ruling on the merits of the federal claim. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985). A state court's application of the procedural bar is "adequate" if it is "strictly or regularly followed." *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). If the state court occasionally excuses non-compliance with a procedural rule, that does not render its procedural bar inadequate. *See Dugger v. Adams*, 489 U.S. 401, 410-12 n.6 (1989). "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Although a procedurally barred claim has been exhausted, as a matter of comity, the federal court will decline to consider the merits of that claim. *See id*. at 729-32.

However, because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *See Reed v. Ross*, 468 U.S. 1, 9 (1984). Generally, a federal court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates "cause" for the failure to properly exhaust the claim in state court and "prejudice" from the alleged constitutional violation, or shows that a "fundamental miscarriage of justice" would result if the claim were not heard on the merits. *Coleman*, 501 U.S. at 750. Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless claims regardless of whether the claim was properly exhausted in state court. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless").

**III.    Exhaustion and Procedural Bar Applied to Petitioner's Claims**

    **A.    Ground One and Portions of Grounds Two, Three and Four**

In Ground One, Petitioner argues that his Fourth Amendment rights were violated because a police detective fabricated the facts used to establish probable cause for his arrest.[2]  (Doc. 1 at 7.)  Petitioner did not present this claim to any state court.  (Doc. 10, Exs. C, E, G, I.)

In Ground Two, Petitioner asserts a due process violation based on trial counsel's stipulation to the admission of evidence, and he asserts several claims of ineffective assistance of trial counsel.  (Doc. 1 at 7.)  As Respondents note, Petitioner did present his due process claim or his claim that trial counsel was ineffective for failing to secure forensic fingerprint and DNA evidence to any state court on direct appeal or during his post-conviction proceedings.[3]  (Doc. 10, Exs. C, E, G, I.)

In Ground Three, Petitioner presents several claims, including (1) a claim that trial counsel was ineffective for failing to show Petitioner a copy of the charges against him,

---

[2]  As Respondents' argue (Doc. 10 at 16), Petitioner's Fourth Amendment claim is not cognizable on federal habeas corpus review.  The Ninth Circuit recognizes that "[i]f the state has provided a state prisoner an opportunity for full and fair litigation of his Fourth Amendment claim, [the court] cannot grant federal habeas relief on the Fourth Amendment issue."  *Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir. 2005) (citing *Stone v. Powell*, 428 U.S. 465, 494 (1976)).  In determining whether a state prisoner had a full and fair opportunity to litigate his Fourth Amendment claim, a court should examine the extent to which the claim was considered by the state trial and appellate courts.  *See Abell v. Raines*, 640 F.2d 1085, 1088 (9th Cir. 1981) (finding that a 45-page evidentiary hearing transcript, a four-page appellate opinion, and substantial briefs demonstrated careful consideration of appellant's Fourth Amendment claim).

Although Petitioner did not raise a Fourth Amendment claim to the state courts, there is no evidence that he was denied a full and fair opportunity to litigate that claim.  Accordingly, habeas relief is unavailable on that claim.  *See Moormann*, 426 F.3d at 1053.

[3]  In Ground Four, Petitioner also argues that trial counsel was ineffective for failing to obtain DNA evidence.  (Doc. 1 at 10.)  Although Petitioner exhausted some claims of ineffective assistance of counsel in state court, that was not sufficient to exhaust other claims of ineffective assistance of counsel based on different allegations.  *See Gulbrandson v. Ryan*, ___ F.3d ___, 2013 WL 5779188, at *12 (9th Cir. Oct. 28, 2013) ("As a general matter, each 'unrelated alleged instance [] of counsel's ineffectiveness' is a separate claim for purposes of exhaustion.") (quoting *Moormann*, 426 F.3d at 1056); *see also Kelly v. Small*, 315 F.3d 1063, 1068 n.2 (9th Cir. 2003) (requiring exhaustion in state court of the factual basis of each distinct ineffective-assistance claim), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007).

and (2) a claim of ineffective assistance of counsel and "malicious prosecution," based on his allegations that Detective Pooley, the prosecutor, and defense counsel "conspired to keep [Petitioner] in the dark about the actual completion of his jury trial." (Doc. 1 at 17.) To support his claim of ineffective assistance and malicious prosecution, Petitioner asserts that he was not allowed to be present after the jury returned its verdict on October 6, 2008, but that proceedings continued as evidenced by jury questions dated after October 6, 2008. (Doc. 1 at 16-17.) Petitioner did not present these claims of ineffective assistance of counsel and malicious prosecution to the state courts on direct appeal or on post-conviction review. (Doc. 10, Exs. C, E, G, I.)

In Ground Four, Petitioner alleges ineffective assistance of counsel and a due process violation based on counsel's "stipulation of items into evidence," failure to investigate, and failure to subpoena witnesses and evidence. (Doc. 1 at 10.) He also alleges that the prosecutor and the Tempe Police Department "conspired to violate his rights to equal protection and due process." (Doc. 1 at 18.) Petitioner did not present his due process or equal protection claims to the state courts on direct appeal or post-conviction review. (Doc. 10, Exs. C, E, G, I.)

It would be futile for Petitioner to return to the state court to try to exhaust Ground One and these portions of Grounds Two, Three, and Four because a successive petition for post-conviction relief would be untimely, and these claims would be precluded from Rule 32 review because they could have been raised in Petitioner's prior post-conviction proceeding. *See* Ariz. R. Crim. P. 32.2(a)(3) and 32.4(a); *see also State v. Bennett*, 146 P.3d 63, 67 (2006) ("As a general rule, when [claims] are raised, or could have been raised, in a Rule 32 post-conviction proceeding, subsequent claims [] will be deemed waived and precluded.") (internal quotation omitted). Accordingly, Ground One and these portions of Grounds Two, Three, and Four are technically exhausted and procedurally defaulted. *See McKinney v. Ryan*, 730 F.3d 903, 913 n.6 (9th Cir. 2013) (finding claims procedurally defaulted because petitioner was barred from exhausting his claims in the first instance by Rules 32.2(a)(3) and 32.4(a)); *see also O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 848 (1999).  As discussed below in Section III.B, Petitioner has not established any basis to excuse the procedural bar to habeas corpus review of Ground One or these portions of Grounds Two, Three, and Four.

**B.      Petitioner has not established a Basis to Overcome the Procedural Bar**

Because Petitioner's claim asserted in Ground One and portions of Grounds Two, Three, and Four are procedurally barred, federal habeas corpus review of those claims is unavailable unless Petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice" to overcome the procedural bar.  *See Coleman*, 501 U.S. at 749. For the reasons below, the Court finds that Petitioner has not established a basis to overcome the procedural bar.  Accordingly, the Court recommends that habeas corpus review be denied and does not consider the merits of those claims.

**1.      Fundamental Miscarriage of Justice**

A federal court may review the merits of a procedurally defaulted claim if the petitioner demonstrates that failure to consider the merits of that claim will result in a "fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A "fundamental miscarriage of justice" occurs when "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

To establish a fundamental miscarriage of justice, a petitioner must present "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial."  *Schlup,* 513 U.S. at 324.  The petitioner has the burden of demonstrating that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Id.* at 327.  Petitioner has not shown that failure to consider his claims will result in a fundamental miscarriage of justice, thus, he has not met *Schlup's* high standard and this exception does not excuse the procedural bar.

1          **2.     Cause and Prejudice**

2          A federal court may review the merits of a procedurally defaulted claim if a

3 petitioner establishes "cause" and "prejudice." *Coleman*, 501 U.S. at 750.  To establish

4 "cause," a petitioner must establish that some objective factor external to the defense

5 impeded his efforts to comply with the state's procedural rules. *Teague*, 489 U.S. at 298.

6 A showing of "interference by officials," constitutionally ineffective assistance of

7 counsel, or "that the factual or legal basis for a claim was not reasonably available" may

8 constitute cause. *Murray*, 477 U.S. at 488.

9          "Prejudice" is actual harm resulting from the constitutional violation or error.

10 *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).  To establish prejudice, a

11 habeas petitioner bears the burden of demonstrating that the alleged constitutional

12 violation "worked to his *actual* and substantial disadvantage, infecting his entire trial

13 with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170

14 (1982) (emphasis in original); *see Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991).

15 If petitioner fails to establish cause for his procedural default, then the court need not

16 consider whether petitioner has shown actual prejudice resulting from the alleged

17 constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

18          Liberally construing the Petition, Petitioner argues cause based on the ineffective

19 assistance of appellate counsel.  (Doc. 1 at 7, 8.)  Although in some circumstances the

20 ineffective assistance of appellate counsel may establish cause for a procedural default,

21 "a claim of ineffective assistance must be presented to the state courts as an independent

22 claim before it may be used to establish cause for a procedural default." *Carrier*, 477

23 U.S. at 488-89 ("the exhaustion doctrine . . . generally requires that a claim of ineffective

24 assistance be presented to the state courts as an independent claim before it may be used

25 to establish cause for a procedural default."); *see also Edwards v. Carpenter*, 529 U.S.

26 446, 451-53 (2000) ("ineffective-assistance-of-counsel claim asserted as cause for the

27 procedural default of another claim can itself be procedurally defaulted"); *Tacho v.*

28 *Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (exhaustion requires petitioner to first

1  raise ineffective appellate counsel claim separately in state court before alleging it as

2  cause for default).  Petitioner did not present a claim of ineffective assistance of appellate

3  counsel to the state courts.  (Doc. 10, Exs. C, E, G, I.)  Accordingly, the ineffective

4  assistance of appellate counsel does not establish cause to overcome the procedural bar to

5  habeas corpus review of Ground One and portions of Grounds Two, Three, and Four.

6         Additionally, Petitioner's status as an inmate, lack of legal knowledge and

7  assistance, and limited legal resources do not establish cause to excuse the procedural

8  bar.  *See Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986) (an

9  illiterate pro se petitioner's lack of legal assistance did not amount to cause to excuse a

10  procedural default); *Tacho*, 862 F.2d at 1381 (petitioner's reliance upon jailhouse lawyers

11  did not constitute cause).  Accordingly, Petitioner has not shown cause for his procedural

12  default and the Court does not consider whether Petitioner has shown prejudice.  *See*

13  *Smith*, 477 U.S. at 533.

14  **IV.    Analysis of Petitioner's Remaining Claims in Grounds Two, Three and Four**

15         In Grounds Two, Three, and Four, Petitioner presents several claims of ineffective

16  assistance of counsel.  (Doc. 1 at 8-10.)  With the exception of the claims discussed in

17  Section III.A, Petitioner presented these claims to the state courts on post-conviction

18  review and they were denied.[4]  (Doc. 10, Exs. G, I, J.)

19         **A.    Federal Habeas Review of State Court Decisions**

20         Because these claims were adjudicated on the merits in state court, federal habeas

21  relief is not available unless Petitioner shows: (1) that the state court's decision "was

22  contrary to" federal law as clearly established in the holdings of the United States

23  Supreme Court at the time of the state court decision, *Greene v. Fisher*, ___ U.S. ___,

---

24

25         [4]  Neither the trial court nor the appellate court provided a detailed discussion to
support its decision.  (Doc. 10, Exs. C, J.)  When the state court provides no rationale for

26  its decision, the federal court independently reviews the record to assess whether the state
court decision was objectively unreasonable under controlling federal law.  *Himes v.*

27  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *see also Harrington v. Richter*, 562 U.S.
86, 131 S. Ct. 770, 784-85 (2011) (holding that a state court decision that did not provide

28  reasons is still on the merits and entitled to AEDPA deference).  Thus, although the
record is reviewed independently, the federal court nevertheless defers to the state court's
ultimate decision.  *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

132 S. Ct. 38, 43 (2011); or (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(2); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011). This standard is "difficult to meet." *Harrington,* 131 S. Ct. at 786.   It is also a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court that existed at the time of the state court's decision.  *Greene*, 132 S. Ct. at 44.  A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."  *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted).

A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case.   *Brown v. Payton*, 544 U.S. 133, 141 (2005).   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 131 S. Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determination."  *Id.*

When a state court decision is deemed to be "contrary to" or an "unreasonable application of" clearly established federal law, a petitioner is not entitled to habeas corpus relief unless the erroneous state court ruling also resulted in actual prejudice as defined in

1    *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  *Benn v. Lambert*, 283 F.3d 1040, 1052

2    n.6 (9th Cir. 2002).  "Actual prejudice" means that the constitutional error at issue had a

3    "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*,

4    507 U.S. at 631.

5           Here, because the pending habeas petition alleges ineffective assistance of counsel

6    under *Strickland v. Washington*, 466 U.S. 668 (1984), the *Strickland* prejudice standard

7    applies and the court does not engage in a separate analysis applying the *Brecht* standard.

8    *See Avila v. Galaza*, 297 F.3d 911, 918 n.7 (9th Cir. 2002) (quoting *Jackson v. Calderon*,

9    211 F.3d 1148, 1154 n.2 (9th Cir. 2000) (stating that the court "need not conduct

10   harmless error review of *Strickland* violations under *Brecht* . . . because '[t]he; *Strickland*

11   prejudice analysis is complete in itself; there is no place for additional harmless-error

12   review.")).

13              **B.       Establishing a Claim of Ineffective Assistance of Counsel**

14          To establish a claim of ineffective assistance of counsel a petitioner must

15   demonstrate that counsel's performance was deficient under prevailing professional

16   standards, and that he suffered prejudice as a result of that deficient performance.

17   *Strickland*, 466 U.S. at 687-88.  To establish deficient performance, a petitioner must

18   show "that counsel's representation fell below an objective standard of reasonableness."

19   *Id.* at 699.  A petitioner's allegations and supporting evidence must withstand the court's

20   "highly deferential" scrutiny of counsel's performance, and overcome the "strong

21   presumption" that counsel "rendered adequate assistance and made all significant

22   decisions in the exercise of reasonable professional judgment."  *Id.* at 689-90.  A

23   petitioner bears the burden of showing that counsel's assistance was "neither reasonable

24   nor the result of sound trial strategy," *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th

25   Cir. 2001), and actions by counsel that "'might be considered sound trial strategy'" do

26   not constitute ineffective assistance.  *Strickland*, 466 U.S. at 689 (quoting *Michel v.*

27   *Louisiana*, 350 U.S. 91, 101 (1955)).

28

1    To establish prejudice, a petitioner must show a "reasonable probability that, but

2    for counsel's unprofessional errors, the result of the proceeding would have been

3    different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is one "sufficient to

4    undermine confidence in the outcome." *Id.* Courts should not presume prejudice.

5    *Jackson v. Calderon*, 211 F.3d 1148, 1155 (9th Cir. 2000). Rather, a petitioner must

6    affirmatively prove actual prejudice, and the possibility that a petitioner suffered

7    prejudice is insufficient to establish *Strickland's* prejudice prong. *See Cooper v.*

8    *Calderon*, 255 F.3d 1104, 1109 (9th Cir. 2001) ("[A petitioner] must 'affirmatively prove

9    prejudice.' . . . This requires showing more than the possibility that he was prejudiced by

10   counsel's errors; he must demonstrate that the errors *actually* prejudiced him.") (quoting

11   *Strickland*, 466 U.S. at 693) (emphasis in original). However, the court need not

12   determine whether counsel's performance was deficient if the court can reject the claim

13   of ineffectiveness based on the lack of prejudice. *See Jackson*, 211 F.3d at 1155 n.3 (the

14   court may proceed directly to the prejudice prong).

15   **C.    Ground Two**

16   In Ground Two, Petitioner asserts that trial counsel was ineffective for stipulating

17   to the admission of a transcript of a recording of a March 4, 2008 conversation between

18   Detective Pooley, Trinidad Valenzuela-Zayas, and Petitioner (trial exhibit 10).[5] (Doc. 1

19

20   _____

21       [5] Petitioner also asserts that trial counsel was ineffective for stipulating to the
     admission of other evidence (identified as exhibits 1, 2, 3, 4, 5, 7, 8, and 11.) (Doc. 1 at
22   14.) He later explains that these exhibits 1-5 were recordings or transcripts of the March
     3, 2008 conversation between Detective Pooley and Valenzuela-Zayas and of the March
23   4, 2008 conversation between Detective Pooley, Valenzuela-Zayas, and Petitioner.
     (Doc. 1 at 9.) Exhibits 7 and 9 are identified as impounded cell phones. (Doc. 1 at 14.)

24

25       Other than the transcript of the March 4, 2008 conversation between Detective
     Pooley, Petitioner, and Valenzuela-Zayas, Petitioner does not explain why counsel was
26   deficient for stipulating to the admission of this evidence or argue how he suffered
     prejudice from counsel's stipulation to the admission of that evidence. These conclusory
27   allegations are insufficient for habeas relief. *See Shah v. United States*, 878 F.2d 1156,
     1161 (9th Cir. 1989) (holding that vague and conclusory allegations of ineffective
28   assistance do not warrant habeas relief); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)
     (finding insufficient conclusory allegations that did not identify what counsel would have
     done if performing effectively).

- 15 -

at 9, Doc. 10, Exs. L at 9-10, M. at 62-63.)  He also argues that counsel did not explain the significance of stipulating to the admission of this evidence.[6]

At trial, defense counsel stipulated to the admission of an English transcript of the March 4, 2008 Spanish–language conversations between Detective Pooley, Valenzuela-Zayas, and Petitioner, which were recorded by a device the detective wore during the events giving rise to Petitioner's conviction.  (Doc. 10, Ex. L at 9-12.)  At trial, counsel explained to the court that he stipulated to the admission of the transcript to prevent the jury from hearing the entire taped conversation that may have been prejudicial to Petitioner.  (Doc. 10, Ex. L at 9-12; Ex. M at 60-70.)  Counsel also stated that he agreed to stipulate to the admission of the transcript of the March 4, 2008 conversations, but did not agree to the admission of transcript of the March 3, 2008 conversations "with Trinidad [Valenzuela-Zaya]."  (Doc. 10, Ex. M at 62-64, L at 11.)  He also explained that in exchange for the stipulation to the admission of the March 4, 2008 transcript "certain parts of the conversation were taken out."  (Doc. 10, Ex. L at 11.)

Petitioner argues that he did not consent to, or understand, the stipulation.  (Doc. 1 at 8, 10.)  However, the record contradicts Petitioner's assertion.  During trial, Petitioner affirmed that he had spoken with counsel about the stipulation, understood the stipulation (including that it would be admitted into evidence and considered by the jury), and agreed to the stipulation.  (Doc. 10, Ex. L at 10.)

Counsel's decision to consent to a stipulation regarding the admission of the transcript was a strategic choice regarding how to present a defense that is "virtually unchallengeable."  *Strickland*, 466 U.S. at 688.  Defense counsel's decision to stipulate to the admission of the transcript to prevent exposing the jury to prejudicial evidence falls within the "wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  Thus, Petitioner has not shown that counsel's performance was deficient.

---

[6]  Petitioner also includes this allegation in Ground Four.  (Doc. 1 at 10.)  The Court will not revisit this allegation in its discussion of Ground Four.

1    Additionally, Petitioner has not shown prejudice.  The record reflects that

2    Detective Pooley testified regarding his conversation with Petitioner, and that the entire

3    conversation was recorded.  (Doc. 10, Ex. M at 45, 68-86.)  Thus, the only difference

4    resulting from counsel's stipulation was that the jury was given the transcript of the

5    conversation rather than hearing the entire recording of the conversation.  As such,

6    Petitioner has failed to demonstrate that, but for the stipulation, there is a reasonable

7    probability that outcome of his trial would have been different.  *See Lang v. Callahan*,

8    788 F.2d 1416, 1418 (9th Cir. 1986) ("The only difference resulting from counsel's

9    stipulation was that the jury was given the victim's statement as an exhibit.  We do not

10   find it reasonably probable that, but for the stipulation, the verdict would have been

11   different").

12    Petitioner argues that the translation of the recorded conversation from Spanish to

13   English may not have been accurate because it was done by Detective Pooley.  (Doc. 1 at

14   8.)  Detective Pooley testified that he was a certified Spanish speaker with the Tempe

15   Police Department and had been bilingual for twelve years.  (Doc. 10, Ex. L at 55.)

16   Petitioner was present at trial when Detective Pooley read from the English transcript of

17   the March 4, 2008 conversation, and Petitioner has not identified any portion of the

18   transcript that is inaccurate.  Although Petitioner speculates that Detective Pooley may

19   have falsified the transcription of the recorded conversations, or fabricated the

20   conversations themselves, Petitioner has not offered any support for his speculative

21   allegations.  (Doc. 1 at 8.)  Accordingly, Petitioner has not shown prejudice from

22   counsel's stipulation to admit into evidence the transcript of the March 4, 2008

23   conversations.  Therefore, Petitioner has not shown that the trial court's resolution of this

24   claim was based on an unreasonable determination of the facts, or that it was contrary to,

25   or an unreasonable application, of federal law.  28 U.S.C. § 2254(d).

26    **D.    Ground Three**

27    In Ground Three, Petitioner argues that trial counsel was ineffective for failing to

28   allow him to review evidence and listen to the recordings of the conversations between

1   Detective Pooley, Petitioner and Valenzuela-Zayas.[7]  (Doc. 1 at 9.)  Assuming that trial

2   counsel's performance was deficient for failing to permit Petitioner to review the

3   evidence, including recordings of the conversations between Petitioner, Detective Pooley

4   and Valenzuela-Zayas, Petitioner has not explained how his review of that evidence

5   would have aided his defense, or that but for counsel's failure to permit him to review

6   that evidence, there is a reasonable probability that the outcome of the trial would have

7   been different.  *See Strickland*, 466 U.S. at 694

8        The record reflects that Petitioner testified in his own defense and denied

9   participating in the offense.  (Doc. M at 42.)  Petitioner claimed that, although he was

10  present at the time of the offense, he was an unwitting participant in the transaction

11  between Detective Pooley and Valenzuela-Zayas.  (Doc. 10, Ex. M at 42-44, 53-54, 80.)

12  Petitioner does not explain how an opportunity to review the evidence against him would

13  have added to this defense.  Thus, Petitioner's claim is speculative and is insufficient to

14  establish deficient performance or prejudice under *Strickland*.  *See Strickland*, 466 U.S. at

15  687-94; *James*, 24 F.3d at 26 (holding that conclusory allegations of ineffective

16  assistance of counsel may be summarily rejected); *United States v. Taylor*, 802 F.2d

17  1008, 1119 (9th Cir. 1986) (same).  Accordingly, Petitioner has not shown that the trial

18  court's rejection of this claim was based on an unreasonable determination of the facts, or

19  that it was contrary to, or an unreasonable application of, federal law.    28

20  U.S.C. § 2254(d).

21  / / /

22  / / /

23  / / /

24

---

25      [7] In his reply, Petitioner appears to assert a violation of *Brady v. Maryland*, 373
    U.S. 83 (1963).  (Doc. 12 at 7.)  Petitioner raised this claim for the first time in his reply.
26  Accordingly, the court will not consider that claim.  *See Zamani v. Carnes*, 491 F.3d 990,
    997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003) ("The
27  district court need not consider arguments raised for the first time in a reply brief.").
    Additionally, Petitioner did not present this claim to the state court.  (Doc. 10, Exs. C, E,
28  G, I.)  Therefore, for the reasons discussed in Section III, federal habeas corpus review of
    that claim is procedurally barred.

1    **E.    Ground Four**

2        In Ground Four, Petitioner argues that trial counsel was ineffective for failing to

3    investigate and "subpoena witnesses for the defense [and] security camera tapes . . . ."[8]

4    (Doc. 1 at 9.)  Petitioner has not shown that the state court's rejection of this claim was

5    based on an unreasonable determination of the facts, or that it was contrary to, or based

6    on an unreasonable application of, federal law.  28 U.S.C. § 2244(d).

7        Counsel has a "duty to make reasonable investigations or to make reasonable

8    decisions that make particular investigations unnecessary."  *Strickland*, 466 U.S. at 691.

9    "This includes a duty to investigate the defendant's 'most important defense,' . . . and a

10   duty adequately to investigate and introduce into evidence records that demonstrate

11   factual innocence, or that raise sufficient doubt on that question to undermine confidence

12   on the verdict . . . . However, 'the duty to investigate is not limitless.'"  *Bragg v. Galaza*,

13   242 F.3d 1082, 1088 (9th Cir. 2001) (citations omitted.)

14       Additionally, the prejudice caused by a failure to investigate is not based on the

15   lack of an investigation itself, but instead results from trial counsel's inability to

16   introduce the helpful evidence that the investigation would have uncovered.  *See Avila v.*

17   *Galaza*, 297 F.3d 911, 919 (9th Cir. 2002) ("We have repeatedly found that a lawyer who

18   fails adequately to investigate, and to introduce into evidence, [evidence] that

19   demonstrates his client's factual innocence, or that raises sufficient doubt as to that

20   question to undermine confidence in the verdict, renders deficient performance.")

---

22   [8]   Petitioner also asserts that trial counsel was ineffective for stipulating to the

23   admission of evidence.  (Doc. 1 at 10.)  Petitioner raised this same claim in Ground Two.
     The Court addressed that claim in its discussion of Ground Two, *see* Section IV.C, and

24   will not revisit that claim.  In Ground Four, Petitioner also asserts that trial counsel was
     ineffective for failing to allow Petitioner to review the evidence, including recordings of

25   conversations.  (*Id.*)  Petitioner raised this issue in Ground Three.  The Court addressed
     that claim in its discussion of Ground Three, *see* Section IV.D, and will not revisit it.

26       In his Reply, Petitioner expands Ground Four to include a claim of prosecutorial

27   misconduct.  (Doc. 7 at 12-14.)  Petitioner raised this claim for the first time in his reply.
     Accordingly, the court will not consider that claim.  *See Zamani*, 491 F.3d at 997.

28   Additionally, Petitioner did not present this claim to the state court.  (Doc. 10, Exs. C, E,
     G, I.)  Therefore, for the reasons discussed in Section III, federal habeas corpus review of
     this claim is procedurally barred.

(internal quotation omitted).  If a particular investigation would not have uncovered beneficial evidence, a petitioner has not been deprived of the benefit of that investigation. Courts may not find prejudice based on speculation about what evidence an investigation might have uncovered.  *Grisby v. Blodgett*, 130 F.3d 365, 371 (9th Cir. 1997); *see Hendricks v. Calderon*, 70 F.3d 1032, 1042 (9th Cir. 1995) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, Hendricks cannot meet the prejudice prong of the *Strickland* test.").

Even assuming that counsel's investigation of the case constituted deficient performance, Petitioner has not established ineffective assistance of counsel because his prejudice argument is predicated on speculation.  Although Petitioner alleges that trial counsel failed to investigate and subpoena "witnesses for the defense," (Valenzuela-Zayas), Petitioner does not describe the nature of the testimony Valenzuela-Zayas would have given or explain why that testimony would have aided his defense.  Additionally, he has not shown that Valenzuela-Zayas would have been available to testify at trial. Petitioner has not submit affidavits from any witness who did not testify at trial, identify what testimony would have been given, or demonstrate that, had such testimony been given, there is a reasonable probability that the outcome of the trial would have been different.  Thus, Petitioner cannot show that the state court's resolution of this claim was contrary to, or based on an unreasonable application of, federal law.

Petitioner also argues that trial counsel was ineffective for failing to "subpoena security camera tapes" from the parking lot where the incident took place.  (Doc. 1 at 9.) Assuming that counsel's performed deficiently by failing to subpoena security tapes, Petitioner has not shown prejudice because he has not described the nature of the evidence that would have been on the alleged security tapes or shown that, but for counsel's failure to introduce that evidence at trial, there is a reasonable probability that the outcome of the trial would have been different.  *See Strickland*, 466 U.S. at 694.  This claim is speculative and does not demonstrate deficient performance or prejudice.  *See Gonzalez v. Knowles*, 515 F.3d 1006, 1014-16 (9th Cir. 2008) (claims "grounded in

speculation" do not establish prejudice under *Strickland*); *Bragg*, 242 F.3d at 1088-89 (mere speculation that further investigation might lead to evidence helpful to petitioner was insufficient to demonstrate ineffective assistance due to failure to investigate); *see also Lopes v. Campbell*, 408 Fed. Appx. 13, 16 (9th Cir. 2010) (state court's application of *Strickland* was not unreasonable when it decided that petitioner's speculation as to the importance of discovery counsel failed to obtain did not demonstrate reasonable probability that, but for counsel's unprofessional errors, result of proceeding would have been different).  Accordingly, Petitioner has not established a claim of ineffective assistance of counsel and has not shown that the state court's resolution of this claim was based on an unreasonable determination of the facts, or that it was contrary to, or based on an unreasonable application of, federal law.  *See* 28 U.S.C. § 2254(d).  Accordingly, he is not entitled to habeas corpus relief.

**V.     Conclusion**

Based on the foregoing, the Petition for Writ of Habeas Corpus should be denied. Accordingly,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed in forma pauperis on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1), should not be filed until entry of the District Court's judgment.  The parties have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72.  Thereafter, the parties have fourteen days within

which to file a response to the objections.  Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

Dated this 13th day of January, 2015.


Bridget S. Bade
United States Magistrate Judge